**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Case No.: 04-CIV-21809-COOKE/BROWN**

ALGODNERA DE LAS CABEZAS, S.A.,
a Spanish corporation,

       *Plaintiff,*

*vs.*

AMERICA SUISSE CAPITAL, LTD.,
a New York corporation, AMERICAN SUISSE
CAPITAL, INC., a New York corporation,

       *Defendant.*
_____/

```
FILED by _____ D.C.
MGC
     FEB 1 5 2006
   CLARENCE MADDOX
 CLERK U. S. DIST. CT.
 S.D. OF FLA. - MIAMI
```

<u>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR DEFAULT FINAL JUDGMENT**</u>

       **THIS CAUSE** came before the Court upon Plaintiff's Motion for Default Final Judgment
**[D.E. 12]**, filed November 26, 2005.  The Court having reviewed and hearing oral argument[1], and
being otherwise advised of the premises, it is hereby,

       **ORDERED AND ADJUDGED** that the Plaintiff's motion is **GRANTED IN PART
AND DENIED IN PART**.

       In the instant motion, the Plaintiff seeks damages in the amount of $14,510,000.00, based
upon the Defendants' failure to deliver bonds they were contractually obligated to furnish to the
Plaintiff.  Specifically, the Plaintiff avers that because of the Defendants' breach of the contract,
it was deprived of the opportunity to receive a total of $10, 875,000.00 in interest payments due

---

     [1]   The Defendants' did not respond to the Complaint and have failed to otherwise make
an appearance in the above-captioned matter.



on the bonds, as well as an additional profit of $5,000,000.00, based on the difference between the discounted purchase price of the bonds and their face value. The Plaintiff alleges further that it would have incurred a total of $875,000.00 in expenses to carry out the bond transaction. In sum, the Plaintiff seeks to recover loss of future profits.

Under New York law[2], loss of future profits which would have been earned but for the breach of contract are recoverable, provided three criteria are satisfied. "First, it must be demonstrated with certainty that such damages have been caused by the breach and, second, the alleged loss must be capable of proof with reasonable certainty. *Kenford Co. v. County of Erie*, 493 N.E.2d 234, 235 (1986)("*Kenford I*"). Third, "there must be a showing that the particular damages were fairly within the contemplation of the parties to the contract at the time is was made." *Id.* The Court finds that the Plaintiff failed to meet the third criterion.

The seminal cases that have decided claims of future lost profits have ruled that they are not recoverable. *See e.g., Kenford I, Kenford Co. v. County of Erie,* 537 N.E.2d 176 (1989)("*Kenford II*"); *Schonfeld v. Hilliard*, 218 F.3d 164 (2d Cir. 2000); *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326 (2d Cir. 1993). *Kenford* involved a contract between the Plaintiff and the Defendant to build a stadium for the Buffalo Bills. Ancillary to this

---

[2]     The Court, sitting with diversity jurisdiction, must apply Florida choice of law provisions to determine what law governs the case. *See Fioretti v. Massachusetts Gen. Life Ins. Co.,* 53 F.3d 1228, 1235 (11th Cir. 1995); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Florida law, the choice of law rule differs depending upon whether the issue involves the interpretation of a contract or a failure to perform. A court addressing a contract interpretation issue must apply the rule of law where the contract is made. *See Fioretti*, 53 F.3d at 1235; *In re Estate of Santos*, 648 So.2d 277, 288 (Fla. Dist. Ct. App. 1995). In contrast, a court addressing a contract performance issue must apply the rule of law where the contract was to be performed. *See Santovenia v. Confederation Life Ass'n,* 460 F.2d 805, 810 (5th cir. 1972). This contract was to be substantially performed in New York City, NY, the Court shall apply New York law.

contract was an agreement authorizing Kenford to manage the stadium for twenty (20) years. In *Kenford I*, the plaintiff sued for the lost profits they would have earned from the management contract. In *Kenford II*, the plaintiff sued for loss profits stemming from the lost appreciation for real estate located in the vicinity of the stadium. Both times, the Court of Appeals denied the claims for lost profits, holding in part that the evidence did not demonstrate that the parties had contemplated such claims, at the time the contract was signed. *Kenford I*, 493 N.E.2d at 236; *Kenford II*, 537 N.E.2d at 176, 179.

*Kenford I* is instructive in determining whether the parties in the instant matter contemplated recovery for lost profits. First, *Kenford I* looked at the contract to see if it contained a provision that discussed the remedy for breach. Second, if the contract remained silent, "the commonsense rule to apply is to consider what the parties would have concluded had they considered the subject." 493 N.E.2d at 236. *Kenford II* followed this rule noting that the commonsense approach includes consideration of "the nature, purpose and particular circumstances of the contract known by the parties. . . as well as "what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made.'" 537 N.E.2d at 179. *Kenford* and the other cases are clear that it is the plaintiff, as the party seeking the lost profits, that has the burden of proof on this issue. *See Kenford I*, 493 N.E.2d at 235; *Trademark Research*, 995 F.2d at 334.

Following *Kenford I* and *Kenford II*, the Court first notes that the Corporate Offer *i.e.,* the contract, is devoid of any evidence of the intention of the parties. As such, the Court must employ the commonsense approach discussed in *Kenford I* and *Kenford II*. A review of two

cases that allowed recovery, are illustrative of the high burden the Plaintiff must meet in order to recover lost profits. In *Ashland Mgmt. Inc. v. Janien*, 624 N.E.2d 1007 (1993), the parties had negotiated extensively over a provision that allowed for the recovery of lost profits and was therefore, fully within the contemplation of the parties. *Id.* at 1011. Likewise in *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570 (2d Cir. 1994), the parties had a prior twenty-year prior relationship and were operating under an injunction that required them to continue performance of their contractual duties. Under these constrained situations, the Second Circuit held that "contemplation of the parties" test was satisfied and that Traveller's damages could be enumerated with some certainty." *Id.* The facts in the instant case do not approach either of these situations, and the evidence that the parties contemplated lost profits, is nonexistent.

In contrast, the evidence in *Trademark Research* is comparable to that presented here.[3] In that case the defendant contracted to design and input a database and search system, for plaintiff's internal use and for its CD-ROM, which plaintiff would market. The defendant failed to supply the database and search system, causing long delays, and, during the interim, lost profits. The Second Circuit affirmed the finding that "the evidence was insufficient to support a finding that the parties contemplated liability for . . . lost profits damages." *Trademark Research*, 995 F.2d at 334. This evidence is akin to that presented by the Plaintiff here. A bare assertion that the non-breaching party was relying on the breaching party's performance, and that the breaching party could believe therefore that its contractual partner would suffer severe damages if performance was not forthcoming. The Court does not agree. As noted by the court

---

[3]   The Court uses the word "presented" lightly. The Plaintiff never addressed New York law nor did it argue the factors necessary to demonstrate that the parties contemplated a recovery of lost profits.

in *Trademark Research*, the defendant's "awareness that there was a large downside risk for [the plaintiff] militates against the idea that [the defendant] would have embraced it." *Id.*

That rational applied equally to this case. It would be wholly irrational to believe that the Defendants' would agree to be liable for lost profits in the amount of $14, 510,000.00. More importantly, there was no evidence that lost profits had been discussed by the parties in *Trademark Research*, and neither is there such evidence here. *Trademark Research* held that an award of lost profits should not be made, *id.,* and that shall be the rule in this case. Lost profits were not contemplated by the parties at the time the contract was made. As such, the Plaintiff shall only be entitled to $490,000.00, the out of pocket damages incurred in procuring the financing for the bond loan. *See Cyberlease, LLC v. JP Morgan Chase Bank,* 2005 WL 2030317, *8 (S.D.N.Y ).

**DONE AND ORDERED** in chambers in Miami, Florida, this _15_ day of February, 2006.

_____
THE HONORABLE MARCIA G. COOKE
UNITED STATES DISTRICT COURT JUDGE


cc:

*All Counsel of Record*